**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NORLITO SORIANO,<br><br>              Plaintiff,<br><br>      v.<br><br>COUNTRYWIDE HOME LOANS, INC.,<br>SOLIDHOMES FUNDING, MANUEL<br>CHAVEZ, MARK FLORES, SOLIDHOMES<br>ENTERPRENEURS, INC., BANK OF<br>AMERICA CORP., AND DOES 5-100,<br><br>              Defendants. | Case No.: 09-CV-02415-LHK<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART MOTION FOR<br>SUMMARY JUDGMENT |

Plaintiff Norlito Soriano brings suit against Countrywide Home Loans, Inc. (CHL) and Bank of America Corporation (BofA) (together, Defendants).[1]  Plaintiff alleges that Defendants improperly changed the terms of his home mortgage loan, and failed to respond to complaint letters written by his counsel about this change.  On the basis of these allegations, Plaintiff alleges three causes of action: violation of the Real Estate Settlement Procedures Act ("RESPA", 12 U.S.C. § 2601 *et seq*.); violation of California's Unfair Competition Law ("UCL," Bus. & Prof. Code § 17200 *et seq*.); and violation of the Truth in Lending Act ("TILA," 15 U.S.C. § 1601 *et seq*.).  Presently before the Court is Defendants' motion for summary denial of all Plaintiff's claims (Dkt. No. 49, Motion).  The Court finds this matter suitable for decision without oral argument.  *See* Civ.

---

[1] Plaintiff voluntarily dismissed the other named defendants.  *See* Dkt. No. 48.

1  L.R. 7-1(b).  Therefore, the April 14, 2011 hearing on this Motion is VACATED.  For the reasons
2  set forth below, the Motion is GRANTED in part and DENIED in part.

3      I.      Introduction

4      Plaintiff initially filed a complaint asserting only California law claims in Santa Clara
5  County Superior Court on January 24, 2008.  Dkt. No. 1.  The matter was removed to this Court on
6  June 1, 2009, after the Plaintiff added claims arising under federal law in his Third Amended
7  Complaint (the RESPA, TILA, and a UCL claim based on these alleged violations).  *Id.*
8  Defendants moved to dismiss the Third Amended Complaint.  Judge Ware, to whom this case was
9  previously assigned, dismissed the federal claims but granted Plaintiff leave to amend those claims.
10 *See* Dkt. No. 17.  In dismissing the claims, Judge Ware found that Plaintiff had not sufficiently
11 alleged that he made a Qualified Written Request (QWR) under RESPA, and that his pleadings did
12 not establish a basis for equitably tolling his claim for TILA damages (which was otherwise barred
13 by the one-year statute of limitations).  *Id.*

14     Plaintiff then filed a Fourth Amended Complaint (4AC).  Defendants moved to dismiss all
15 of the asserted claims other than the TILA claim.  This time, Judge Ware denied the Motion to
16 Dismiss regarding the federal claims.[2]  *See* Order dated Feb. 5, 2010 (Dkt. No. 28).  Judge Ware
17 found that Plaintiff had sufficiently alleged both a RESPA violation and resulting actual and
18 statutory damages.  *Id.* at 5-6.  In the same Order, Judge Ware dismissed all of the state law causes
19 of action, finding that Plaintiff had failed to allege sufficient facts to state those claims.
20 Accordingly, the remaining causes of action after the February 5, 2010 Order were Plaintiff's
21 RESPA and TILA claims, and the UCL claim based on the underlying RESPA and TILA claims.
22 Defendants timely filed this Motion for Summary Judgment of Plaintiff's three remaining claims.
23 Plaintiff did not timely file his Opposition; however, the Court granted a Motion for Extension of
24 Time to File an Opposition.  *See* Dkt. No. 54.  Plaintiff filed his Opposition within the extended
25 time.  Defendants then filed a Reply.

26

27

28  [2] The California law claims, other than the UCL claim premised on the alleged RESPA violation, were all dismissed with prejudice.

United States District Court
For the Northern District of California

2

Case No.: 10-CV-02415-LHK
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

II.     Factual Background

On November 1, 2006, Plaintiff executed a promissory note, by which he borrowed $281,400 from Alliance Bancorp.  Talbot Decl. ISO Motion (Talbot Decl.) at Ex. A (Pl. Dep.), Ex. 1 (Note).  The Note refinanced Plaintiff's property at 574 Quady Lane, Madera, California, 93637. *Id*.  The Note secures a Deed of Trust (Deed), also executed on November 1, 2006, and recorded against the Quady Lane property.  *Id*. at Ex. 2 (Deed).  In the negotiations relating to the Note, Plaintiff had discussions with certain real estate agents, but had no contact with either of the Defendants.  Talbot Decl. Exs. B-E.  Plaintiff did not read the loan documents before he signed them, instead relying on representations about the terms of the loan made by the real estate agents.  Talbot Decl. Ex. A, 31:11-32:5; *see also* Opp'n at 18.

The loan documents include a number of different forms, all of which were signed by Plaintiff on November 1, 2006.  The Note itself states that the initial interest rate on the loan is 1%, but that this interest rate can change beginning on January 1, 2007.  *See* Note ¶ 2.   The Note states that the principal amount of the loan may change, but will never exceed 110% of the original principal.  Note ¶ 1.  Elsewhere, however, it states that the principal may exceed 110% if the borrower makes only minimum payments and if the interest rate increases; in this event, a new minimum payment sufficient to repay the unpaid principal based on the interest rate in effect during the prior month will apply.  Note ¶ 3(F).  The Note states that the initial monthly payments will be $711.54, but that these payments may change starting January 1, 2008, and every twelfth month thereafter, and may change sooner if the principal exceeds 110%.  Note ¶ 3.  The Note further states that Plaintiff will be billed for various different so-called "payment options," which become applicable after January 1, 2007.  Note ¶ 3.  Four types of payment options are defined: 1) Minimum Payment (which will not decrease the principal, and could result in a principal decrease if it is insufficient to pay the current interest due); 2) Interest Only Payment (which will cover interest, but will not decrease the principal; 3) 30-year Amortized Payment (which will pay off the principal and interest in substantially equal payments by the maturity date; and 4) 15-year Amortized Payment (which will pay off the principal and interest in substantially equal amounts within a fifteen year term).  *Id*.

Case No.: 10-CV-02415-LHK
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

1    In addition to the Note itself, Plaintiff executed a document titled Adjustable Rate Balloon

2    Rider (Balloon Rider) which states that it "is incorporated into and shall be deemed to amend and

3    supplement the Mortgage Deed of Trust." Pl. Dep. Ex. 2 (Note) at 16-20. Like the Note, the

4    Balloon Rider states that the interest rate applied to the principal may change as of January 1, 2007,

5    and that the monthly payment may change starting January 1, 2008, or earlier if the unpaid

6    principal balance exceeds 110%. *See* Note at ¶¶ 2 - 3.

7    Plaintiff also executed a document titled Balloon Payment Disclosure. Contrary to the

8    statements in the Note and other disclosure documents regarding the changing interest rate and

9    payment options, this document states that the "loan provides for 359 monthly payments of

10   principal and interest in the amount of $711.54 each. Assuming that all of the monthly payments

11   have been paid exactly on the date that each is due, a final balloon payment of the then outstanding

12   principal balance plus all earned interest remaining unpaid estimated to be in the amount of

13   $186,191.38 shall become due and payable on DECEMBER 1, 2036." *See* Pl. Dep. Ex. 3 (Balloon

14   Disclosure).

15   Plaintiff also signed a "Variable Rate Mortgage Balloon Loan Program Disclosure," which

16   provides information regarding the different payment options available depending on various

17   circumstances, as defined in the Note. *See* Pl. Dep. Ex. 4 (Second Balloon Disclosure). Plaintiff

18   also signed a document titled "Federal Truth-in-Lending Disclosure Statement." *See* Pl. Dep. Ex.

19   5. This statement shows that Plaintiff's payment schedule would be: $711.54 monthly for 12

20   months; $764.91 monthly for 10 months; $2,280.16 monthly for 337 months; and a final payment

21   of $186,191.39 on December 1, 2036.

22   Plaintiff's loan was transferred from the original lender, Alliance, to a third party (GMAC

23   Mortgage), and then transferred again to CHL on February 1, 2007. *See* Compl. Ex. 6. Defendants

24   do not deny that while the loan was serviced by Alliance and GMAC, Plaintiff was billed $711.54

25   monthly, in accordance with the 1% interest rate in effect during that time. Opp'n at 14. After

26   CHL took possession of the loan, it raised the interest rate. *See*, e.g., Pl. Dep. Ex. 6. Beginning in

27   March, 2007, CHL billed Plaintiff using the "payment options" described in the Note. *See* Jones

28

4

Case No.: 10-CV-02415-LHK
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

Decl. ISO Motion at ¶¶ 6-7.  Because the interest rate had been raised, the "minimum payment" of $711.54 no longer covered principal and interest.

In March, 2007, Plaintiff contacted CHL by writing on the payment coupon for that month. *See* Pl. Dep. Ex. 7.  Plaintiff wrote a list of statements and questions, including "why keep changing account numbers" and "no payment options this month . . . no home loan activity this month – please respond."  *Id*.  CHL responded to this inquiry with a letter dated March 16, 2007, stating that Plaintiff's account number had changed when the loan was transferred, and indicating that his March payment and an additional payment were applied toward the loan, and that the next payment was due on April 1, 2007.  Pl. Dep. Ex. 8.  Additional correspondence between Plaintiff and CHL followed.  Finally, on September 20, 2007, Plaintiff's attorney sent a letter to CHL.  *See* Pl. Dep. Ex. 10.  In this letter, Plaintiff's counsel states that Plaintiff's belief that there has been an error in servicing his account because the principal of his loan has increased despite his monthly payments of $711.54.  *Id*.  Citing the Balloon Disclosure, the letter states Plaintiff's understanding that $711.54 should cover both interest and principal.  *Id*.  CHL never provided a substantive response to this letter.  Rather, CHL first requested that Plaintiff's counsel provide proof of Plaintiff's consent for CHL to discuss the loan with counsel.  Plaintiff's counsel sent a follow-up letter asking CHL to respond to the QWR.  Plaintiff's counsel also responded to CHL's demand for proof of Plaintiff's consent to discuss the loan by forwarding an authorization.  CHL responded with a letter providing a phone number for Plaintiff or counsel to contact with questions.  Compl. Ex. 8.

BofA is the parent company for Countrywide Financial Corporation; CHL is a wholly-owned subsidiary of Countrywide Financial Corporation.  *See* Jones Decl. ¶¶ 4-5.

III.    Legal Standard

Summary judgment should be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  Material facts are those which may affect the outcome of the case, and a dispute as to a material fact is "genuine" only if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

5

United States District Court
For the Northern District of California

(1986).  On a motion for summary judgment, the Court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "[T]he district court does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559-560 (2006).

The moving party has the initial burden of production for showing the absence of any material fact.  *Celotex*, 477 U.S. at 331.  The moving party can satisfy this burden in two ways.  "First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim.  Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."  *Id*.  Once the moving party has satisfied its initial burden of production, the burden of proof shifts to the nonmovant to show that that there is a genuine issue of material fact.  A party asserting that a fact is genuinely disputed must support that assertion by either citing to particular parts of materials in the record or by showing that the materials cited by the moving party do not establish the absence of a genuine dispute.  Fed. R. Civ. P. 56(c).  The nonmovant must go beyond its pleadings "and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324 (internal quotation marks and citation omitted).

IV.   Application

Defendants move for summary judgment denying all of Plaintiff's claims as a matter of law.  In the alternative, Defendants move for summary adjudication of a number of issues.  The Court first addresses the claims for summary judgment.

a.   RESPA

Defendants move for summary judgment of Plaintiff's RESPA claim on two bases.  First, Defendants argue that there was no RESPA violation because CHL properly responded to Plaintiff's Qualified Written Requests (QWRs).  Second, Defendants argue that even if there was a RESPA violation, Plaintiff is not entitled to actual or statutory damages.

Case No.: 10-CV-02415-LHK
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

1

i.  RESPA violation

2
RESPA Section 2605(e) provides guidelines for servicers of loans to follow upon receiving

3
a qualified written request for information relating to the servicing of a loan from a borrower, or

4
from a borrower's agent.  12 U.S.C. § 2605(e).  Upon receiving a qualified written request, the

5
servicer must provide a written response acknowledging receipt of the correspondence within

6
twenty days, and provide a substantive response to the inquiry within sixty days.  *Id.*  §§

7
2605(e)(1)(A) & (e)(2).

8
A QWR is a written correspondence that (i) includes, or enables the servicer to identify, the

9
name and account of the borrower, and (ii) includes a statement of the reasons for the belief of the

10
borrower that the account is in error provides sufficient detail to the servicer regarding other

11
information sought by the borrower.  12 U.S.C. §§ 2603(e)(1)(B)(i) & (ii).  Judge Ware previously

12
held that while Plaintiff's correspondence with CHL, written on his loan payment coupons, were

13
not QWRs, the September 20, 2007 from counsel for Plaintiff to CHL was a QWR under RESPA.

14
*See* September 16, 2009 Dismissal Order at 2-3; February 5, 2010 Order at 4-5.

15
Defendants argue that there was no RESPA violation because CHL properly responded to

16
the September 20, 2007 QWR.  This argument fails.  Defendants have not introduced any new

17
evidence of a response to this QWR sent by Plaintiff's attorney.  Judge Ware previously found that

18
Plaintiff had stated a claim for a RESPA violation based on CHL's alleged failure to adequately

19
respond to the QWR.

20
A substantive response includes: (1) making appropriate corrections in the account of the

21
borrower and transmitting a written notification of the correction pursuant to Section

22
2605(e)(2)(A); (2) providing the borrower with a written explanation or clarification as to why the

23
servicer believes the account is correct pursuant to Section 2605(e)(2)(B); or (3) providing the

24
borrower with the information requested or an explanation of why the information requested is not

25
available pursuant to Section 2605(e)(2)(C).  12 U.S.C. § 2603(e)(2).  The evidence of record

26
shows that no such explanation or clarification was provided to Plaintiff.  Instead, Defendants'

27
final response, upon receiving authorization to release the loan documents, merely provided a

28
phone number for the Plaintiff to call.  This response is insufficient under RESPA.  Because

7

Case No.: 10-CV-02415-LHK
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

1    Defendants have introduced no additional evidence of a response satisfying RESPA, Defendants

2    are not entitled to summary judgment regarding Plaintiff's RESPA claim.

3                                     ii.   RESPA damages

4            Next, Defendants argue that even if a RESPA violation occurred, Plaintiff is not entitled to

5    either his claimed actual damages or any statutory damages for such a violation.  The Court agrees

6    that Plaintiff cannot establish causation of any of his claimed actual damages other than attorney's

7    fees based on the alleged RESPA violation.  In addition, the Court finds that Plaintiff has failed to

8    introduce evidence sufficient to create a factual dispute as to whether CHL engaged in a "pattern or

9    practice" of violating RESPA.

10           Plaintiff claims RESPA damages of the increased loan payments, attorney's fees incurred in

11   his attempt to correct the monthly payments and for costs of this lawsuit, loss of interest on the

12   increased payment amounts, loss of other real estate properties due to a lack of funds to pay for

13   them caused by the increased payments on the Quady Lane property, emotional distress due to his

14   increased mortgage payments, and damage to credit.  4AC ¶ 127; Talbot Decl. Ex. H at 7-8.

15   Plaintiff ties these damages to the RESPA violation by arguing that "[i]f Countrywide ha[d]

16   properly responded to the Plaintiff's complaints or those from his attorney of errant loan servicing,

17   and increased payments, and cured its errors," Plaintiff would not have incurred any of these

18   damages.  This is mistaken, however.  The loan documents in evidence show that pursuant to the

19   terms of the Note, CHL was entitled to change Plaintiff's interest rate.  Plaintiff's argument rests

20   on the assumption that Plaintiff was entitled to a fixed-rate 1% interest loan until the balloon

21   payment was due, but that is not what the Note, the TILA disclosure, or anything other than the

22   Balloon Disclosure document actually says.  Plaintiff has not attempted to bring a breach of

23   contract claim based on the apparently contradictory information in the Balloon Disclosure to

24   establish that the terms disclosed there, rather than the terms disclosed in all the other loan

25   documentation, should control.  As CHL points out, a proper response to the QWR would have

26   simply confirmed that QWR was servicing the loan properly and that the payment options

27   presented to Plaintiff were appropriate.

28

Case No.: 10-CV-02415-LHK
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

United States District Court
For the Northern District of California

"RESPA, as codified at 12 U.S.C. § 2605(f)(1)(A), authorizes 'actual damages to the borrower *as a result of* the failure [to comply with RESPA requirements].'" *Lal v. American Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (citing 12 U.S.C. § 2605(f)(1)(A)) (emphasis added). Thus, even if a RESPA violation exists, Plaintiff must show that the losses alleged are causally related to the RESPA violation itself to state a valid claim under RESPA. *Id.* Allegations made under a separate cause of action are insufficient to sustain a RESPA claim for actual damages as they are not a direct result of the failure to comply. In addition, filing suit generally does not suffice as a harm warranting actual damages. *Id.* If this were true, every RESPA suit would have a built-in claim for damages. *Id.*

In *Allen v. United Fin. Mortg. Corp.,* No. 09-2507 SC, 2010 U.S. Dist. LEXIS 26503, (N.D. Cal. March 22, 2010), the plaintiff alleged that due to the defendant's failure to notify him of certain assignments of the loan and its servicing rights, the plaintiff was financially unable to pay a monthly mortgage payment, his credit was impacted negatively, and he suffered emotional distress due to the inability to pay the monthly mortgage payment. 2010 U.S. Dist. LEXIS 26503 at *12-*15. The court reasoned that "[e]ven if Plaintiff is correct in claiming that Defendants' other conduct resulted in his inability to pay his mortgage, this [did] not constitute a RESPA claim unless Plaintiff [could] point to some colorable relationship between his injury and the actions or omissions that allegedly violated RESPA." *Id.* This line of reasoning has been followed in other decisions from this District. *See Ramanujam v. Reunion Mortg., Inc.,* No. 5:09-cv-03030-JF, 2011 U.S. Dist. LEXIS 10672 at *14 (N.D. Cal. Feb. 3, 2011) (granting summary judgment on RESPA claim due to Plaintiff's failure to establish that his inability to acquire more favorable financing resulted from the asserted RESPA violation).

Plaintiff cannot claim that the insufficient response to the QWR, in and of itself, caused his loan payments to rise, directly caused his emotional distress resulting from the rising charges, or directly damaged his credit. Plaintiff has failed to introduce any evidence to show that "some colorable relationship between his injury and the actions or omissions that allegedly violated RESPA" exists. *Allen*, 2010 U.S. Dist. LEXIS 26503 at *14. However, the Court finds that Plaintiff *has* sufficiently established a causal relationship between the claimed RESPA violation

Case No.: 10-CV-02415-LHK
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    and the attorney's fees Plaintiff incurred when his attorney sent follow-up correspondence to CHL

2    after the initial QWR was sent.  Had CHL properly responded in the first instance, Plaintiff would

3    not have incurred those additional fees, as no follow-up would have been required.  As discussed

4    above, attorney's fees are generally not available for bringing suit on an alleged RESPA violation

5    unless other actual damages are established, and the Court does not include the fees incurred by

6    Plaintiff in bringing this lawsuit as actual damages.  However, the Court finds that Plaintiff has

7    identified a disputed fact as to whether or not he is entitled to reimbursement of just those fees

8    incurred in his attempts to get a response to his QWR.  Therefore, the Court GRANTS Defendants'

9    Motion for Summary Judgment regarding Plaintiff's claimed RESPA damages, except for

10   attorney's fees directly associated with obtaining a response to the QWR.[3]

11                           iii.  Statutory Damages

12             Statutory damages are available if a Plaintiff can establish a pattern or practice of

13   noncompliance with the requirements of this section.  12 U.S.C. § 2605(f)(1)(B).  In this case,

14   Plaintiff has identified only one QWR (the September 20, 2007 letter from Plaintiff's counsel to

15   CHL).  Defendants move for summary judgment on the basis that this single failure to respond is

16   insufficient to establish a "pattern or practice of noncompliance."  The Court agrees.  Although

17   Judge Ware previously determined that Plaintiff alleged sufficient facts to state a claim for

18   statutory damages, Plaintiff has failed to introduce any evidence of additional RESPA violations.

19   A single alleged RESPA violation is insufficient to establish a "pattern or practice."  *See, e.g.,*

20   *Lawther v. Onewest Bank*, No. C 10-0054 RS, 2010 U.S. Dist. LEXIS 131090 at *20-21 (N.D. Cal.

21   Nov. 30, 2010).  Although Plaintiff's attorney sent a follow-up letter seeking a response to the

22   original QWR, this does not constitute a separate QWR and a separate failure to respond.  Because

23   Plaintiff has failed to introduce evidence of anything other than a single failure to respond to a

24   single QWR, Plaintiff cannot establish that CHL engaged in a "pattern or practice" of RESPA

25

26

27   [3] Although Plaintiff may not claim his attorney's fees for bringing this case as actual damages
     stemming from the alleged RESPA violation, if he ultimately prevails on his RESPA claim,
     Plaintiff will have a claim for reasonable litigation-related attorney's fees pursuant to the provision
28   of RESPA authorizing award of such fees.  12 U.S.C. § 2605(f)(3).

Case No.: 10-CV-02415-LHK
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

1   violations.  Accordingly, Defendants' Motion is GRANTED as to Plaintiff's claimed statutory

2   damages.

3          a.   TILA

4          TILA is designed "to assure a meaningful disclosure of credit terms so that the consumer

5   will be able to compare more readily the various credit terms available to him and avoid the

6   uninformed use of credit." 15 U.S.C. § 1601(a).  Rather than substantively regulate the terms

7   creditors can offer or include in their financial products, the act primarily requires disclosure.  *See*

8   *Hauk v. J.P. Morgan Chase Bank USA,* 552 F.3d 1114, 1120 (9th Cir. 2009).  Defendants allege

9   that the TILA claim is barred by the statute of limitations, and that the equitable tolling should not

10  apply.  The Court agrees.

11          i.   Statute of Limitations

12          A claim seeking damages for a TILA violation must be brought within the one year statute

13  of limitations.  15 U.S.C. § 1640(e).  This one-year limitations period generally on the date of

14  disclosure constituting the alleged violation.  *Katz v. Bank of California*, 640 F.2d 1024, 1025 (9th

15  Cir. 1981).  In *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899 (9th Cir. 2003), the Ninth Circuit

16  reasoned that the time commences on the date the loan papers were signed, if the Plaintiff was in

17  full possession of all information relevant to the discovery of a TILA violation at that time.  *Meyer*,

18  342 F.3d at 902.

19          On November 1, 2006, Plaintiff signed the Note, the Truth-in-Lending Disclosure

20  Statement (TILDS), the Balloon Rider, and the Second Balloon Disclosure, all of which

21  prominently stated that Plaintiff was agreeing to an adjustable interest rate loan.  Plaintiff also

22  signed the Balloon Disclosure, the only document which suggested otherwise.  The TILDS

23  explicitly enumerated the total sum that would be due to satisfy the loan and how the payments

24  would be structured throughout the life of the loan.  The discrepancy between the Balloon

25  Disclosure and all of the other loan documentation was apparent on the face of the documents.

26  Therefore, Plaintiff had all the necessary information to discover his TILA claim on November 1,

27  2006.

28

Case No.: 10-CV-02415-LHK
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    The limitations period may be equitably tolled only if "despite all due diligence, a plaintiff

2  is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pacific*

3  *Bell,* 202 F.3d 1170, 1178 (9th Cir. 2000).  Plaintiff argues that he could not discover his TILA

4  claim until his interest rate was raised and his payment options changed as a result, but this does

5  not justify equitably tolling Plaintiff's claim.  In fact, Plaintiff concedes that he did not read most

6  of the loan documents he signed and instead relied solely on the representations made by the loan

7  brokers.  A reasonable exercise of due diligence requires that Plaintiff read all the loan documents.

8  *See Nichalson v. First Franklin Fin. Corp.,* No. 2:10-cv-00598-MCE-EFB, 2010 U.S. Dist. LEXIS

9  91750 at *6-*8 (E.D. Cal. Sept. 2, 2010); *Lucero v. Diversified Invs. Inc.,* No. 09cv1742 BTM

10  (BLM), 2010 U.S. Dist. LEXIS 90200 at *3 (S.D. Cal. Aug. 31, 2010).  Plaintiff admits that he

11  failed to exercise such diligence.  Accordingly, the Court finds that Plaintiff has failed to introduce

12  evidence showing that equitable tolling should apply.  Because Plaintiff's TILA claim was brought

13  over a year after the signing of the loan documents, the claim is time-barred.

14    Therefore, summary judgment of the TILA claim is GRANTED.

15    b.   UCL

16    The California UCL prohibits any unlawful, unfair, or fraudulent business act or practice.

17  Cal. Bus. & Prof. Code § 17200.  Its coverage has been described as "sweeping," and its standard

18  for wrongful business conduct is "intentionally broad."  *In re First Alliance Mortg. Co.,* 471 F.3d

19  977, 995 (9th Cir. 2006).  Each "prong" of the UCL provides a separate and distinct theory of

20  liability, *Lozano v. AT & T Wireless Services, Inc.,* 504 F.3d 718, 731 (9th Cir. 2007).

21    Defendants move for summary judgment on Plaintiff's UCL claim.  Defendants argue that

22  if the Court grants their Motion regarding Plaintiff's TILA and RESPA claims, these claims cannot

23  serve as the basis for a UCL claim.  However, the Court has found that Plaintiff's RESPA claim

24  survives summary judgment.   The fact that Plaintiff has claimed actual damages of his attorney's

25  fees relating to the RESPA requests satisfies the standing requirements of the UCL, so Defendants'

26  argument that Plaintiff lacks standing is rejected.  Regarding the "unfair" prong, the evidence

27  shows that the Note requires advance, written notice before a monthly payment amount change.

28  *See* Note at ¶ 4.  Plaintiff states (and Defendants do not dispute) that his monthly payment amount

United States District Court
For the Northern District of California

12

Case No.: 10-CV-02415-LHK
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

was improperly changed without such notice.  *See* Compl. ¶ 131; Opp'n at 21.  The Court finds that

the apparent dispute as to this fact is sufficient to survive summary judgment on this claim.

However, the Court finds that, to the extent Plaintiff intended to assert one, he has failed to support

a UCL claim on a "fraud" theory.  Plaintiff has introduced no evidence supporting fraudulent

activity by Defendants, and Plaintiff did not oppose the Motion as it relates to this prong.

Therefore, Plaintiff's UCL claim, to the extent that it is based on the underlying RESPA violation

and allegedly unfair failure to provide notice before an interest rate change, is not subject to

summary judgment, and Defendants' Motion is DENIED.  To the extent Plaintiff's UCL claim is

based on a "fraudulent" practices prong, Defendants' Motion is GRANTED.

### c.   BofA Liability

Plaintiff states no claims directly against BofA.  Instead, Plaintiff contends that BofA

should be liable for his claims against its subsidiary, CHL.  *See* Opp'n at 10-11.  Defendants argue

that BofA is not liable for any of the claims made against CHL because they are distinct separate

entities and Plaintiff has failed to introduce evidence supporting an agency or other theory

extending CHL's liability to BofA.  The Court agrees.

It is a "fundamental principle of corporate law" that a parent corporation and its subsidiary

are treated as separate legal entities.  *Current, Inc. v. State Bd. of Equalization,* 24 Cal.App.4th

382, 391 (1994); *Laird v. Capital Cities/ABC, Inc.,* 68 Cal.App.4th 727, 741 (1998).  An exception

to this rule is when the subsidiary acts as the agent of the parent.  *Current*, 24 Cal.App.4th at 391.

To establish agency requires a showing that the parent so controls the subsidiary that it becomes

merely the instrumentality of the parent.  *Laird,* 68 Cal.App.4th at 741, 80 Cal.Rptr.2d 454.

Alternatively, a parent corporation may be liable for the acts of its subsidiary if "an abuse of the

corporate privilege justifies holding the equitable ownership of a corporation liable for the actions

of the corporation."  *Sonora Diamond Corp. v. Sup. Ct.,* 83 Cal.App.4th 523, 538 (2000).  This

"alter-ego" theory requires a showing of "more than just . . . control" of the subsidiary by the

parent.  *M/V American Queen v. San Diego Marine Constr. Corp.,* 708 F.2d 1483, 1489 (9th Cir.

1983) (listing commingling of funds and disregard for legal formalities as factors supporting an

alter-ego theory).

Case No.: 10-CV-02415-LHK
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    BofA moves for summary judgment on the basis that Plaintiff has adduced no evidence to

2    support an agency or alter-ego relationship between CHL and BofA.  Plaintiff responds that

3    because Bank of America acquired Countrywide Financial Corporation and its subsidiaries in

4    2008, Bank of America as the successor-in-interest is holding itself out as liable for CHL.  Opp'n

5    at 10.[4]  Plaintiff further argues that because Mr. Jones, Assistant Vice President of Bank of

6    America Loans Servicing, testified about how CHL administered the loan in 2007, the agency

7    theory should apply.  *Id.* at 11.  These arguments fail.  To establish agency, Plaintiff must establish

8    "[d]ominion . . . so complete [and] interference so obtrusive" that the parent is a principal and the

9    subsidiary a mere agent.  *Pacific Can Co. v. Hewes*, 95 F.2d 42, 45-46 (9th Cir. 1938).  Plaintiff

10   has failed to introduce any evidence of control of CHL by BofA, obtrusive or otherwise.

11   Likewise, Plaintiff has failed to introduce any evidence supporting an alter-ego theory.

12        Bank of America and CHL are separate legal entities under the law.  Without some

13   evidence supporting Plaintiff's theory that BofA pervasively and continually controls CHL, the

14   default under California law that a parent corporation and its subsidiary will be treated as separate

15   legal entities must apply.   Thus, there is no issue of triable fact regarding BofA's liability, and the

16   Motion granting summary judgment for BofA against Plaintiff is GRANTED.

17        V.        Conclusion

18        To summarize, the Court finds that, as a matter of law: (1) BofA is not liable for the alleged

19   activities of CHL; (2) Plaintiff's RESPA claim survives summary judgment, but of Plaintiff's

20   claimed actual damages, only the attorney's fees resulting directly from the alleged RESPA

21   violation (meaning those fees which were directly incurred by following up with CHL in an

22   attempt to obtain a substantive response; not fees associated with litigating this case) are available,

23   and statutory damages for a RESPA violation are not available; (3) Plaintiff's TILA claim is time-

---

24

25   [4] In support of this argument, Plaintiff cites a number of print-outs from websites.  Plaintiff asks the
     Court to take judicial notice of these documents; Defendants object.  The Court declines to take
26   judicial notice of these unauthenticated documents, as they do not contain facts that are either
     "generally known" or "capable of accurate and ready determination by resort to sources whose
27   accuracy cannot reasonably be questioned."  *See* Fed. R. Evid. 201.  Plaintiff's counsel also
     requests that the Court take notice of copies of Plaintiff's loan documents attached to his
28   declaration; the Court instead refers to the copies of loan documents attached as exhibits to the
     Complaint and to Plaintiff's Deposition.

Case No.: 10-CV-02415-LHK
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    barred; and (4) Plaintiff's UCL claim survives summary judgment on the alleged "unlawful" and

2    "unfair" prongs, as outlined above.

3    **IT IS SO ORDERED.**

4    Dated: April 11, 2011

5                                                              LUCY H. KOH
                                                              United States District Judge

Case No.: 10-CV-02415-LHK
ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

United States District Court
For the Northern District of California