United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| NORLITO SORIANO, | ) | Case No.: 09-CV-02415-LHK |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| COUNTRYWIDE HOME LOANS, INC., | ) | FINDINGS OF FACT AND |
| SOLIDHOMES FUNDING, MANUEL | ) | CONCLUSIONS OF LAW |
| CHAVEZ, MARK FLORES, SOLIDHOMES | ) | |
| ENTERPRENEURS, INC., BANK OF | ) | |
| AMERICA CORP., AND DOES 5-100, | ) | |
| | ) | |
| Defendants. | ) | |

In this action, Plaintiff Norlito Soriano (Plaintiff) brings suit against Countrywide Home Loans, Inc. (CHL) for violation of California's Unfair Competition Law ("UCL," Bus. & Prof. Code § 17200 *et seq.*). Trial took place on June 6, 2011. Having considered and weighed all the evidence and having assessed the credibility of the only witness, the Court now makes these findings of fact and conclusions of law as required by Fed. Rule Civ. P. 52(a).

I.    Introduction and Procedural Background

Plaintiff initially filed a complaint asserting only California law claims in Santa Clara County Superior Court on January 24, 2008. Dkt. No. 1. The matter was removed to this Court on June 1, 2009, after the Plaintiff added claims arising under federal law in his Third Amended Complaint. Specifically, Plaintiff asserted claims under the Real Estate Settlement Procedures Act ("RESPA," 12 U.S.C. § 2601 *et seq.*), the Truth in Lending Act ("TILA" 15 U.S.C. § 1601 *et seq.*),

1

1    and a UCL claim based in part on the RESPA and TILA claims.  *Id*.  CHL (and another defendant,

2    who has since been dismissed from the case) moved to dismiss the Third Amended Complaint.

3    Judge Ware, to whom this case was previously assigned, dismissed the TILA and RESPA federal

4    claims but granted Plaintiff leave to amend those claims.  *See* Dkt. No. 17.

5           Plaintiff then filed a Fourth Amended Complaint (4AC), reasserting the federal TILA and

6    RESPA claims and a UCL claim based in part on violations of both federal laws.  CHL moved to

7    dismiss all of the asserted claims other than the TILA claim.  This time, Judge Ware denied the

8    Motion to Dismiss the federal claims, but dismissed with prejudice all the state law claims (except

9    for the UCL claim premised on the alleged RESPA and TILA violations).  *See* Order dated Feb. 5,

10   2010 (Dkt. No. 28).  Accordingly, the remaining causes of action after the February 5, 2010 Order

11   were Plaintiff's RESPA and TILA claims, and the UCL claim based on the underlying RESPA and

12   TILA claims.

13          Through a series of motions, including motions for summary judgment, clarification, and

14   reconsideration, the case was narrowed to the UCL claim.  The UCL creates a cause of action for

15   business practices that are 1) unlawful, 2) unfair, or 3) fraudulent.  Cal. Bus. & Profs. Code §

16   17200.  Each "prong" of the UCL provides a separate and distinct theory of liability, *Lozano v. AT*

17   *& T Wireless Services, Inc.,* 504 F.3d 718, 731 (9th Cir. 2007).  Plaintiff asserts UCL violations

18   based on the first two prongs.  First, under the "unlawful" prong of the UCL, Plaintiff claims that

19   CHL is liable, as an assignee, for alleged violations of TILA which occurred during origination of

20   Plaintiff's home mortgage loan.  Second, under the "unfair" prong of the UCL, Plaintiff claims that

21   CHL acted unfairly by failing to give Plaintiff notice of payment changes as required by TILA's

22   implementing statute, Regulation Z, and by the disclosures associated with Plaintiff's mortgage.

23   In addition, Plaintiff argues that CHL acted unfairly because it failed to honor the terms of the Note

24   by raising the interest rate charged to Plaintiff in March, 2007.

25          II.     Findings of Fact

26          On November 1, 2006, Plaintiff executed a promissory note, by which he borrowed

27   $281,400 from Alliance Bancorp.  Def.'s Ex. 1 (Note) at 1.  The Note financed Plaintiff's property

28   at 574 Quady Lane, Madera, California, 93637.  *Id*.  The Note secures a Deed of Trust (Deed), also

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1   executed on November 1, 2006, and recorded against the Quady Lane property.  Def.'s Ex. 2

2   (Deed).  Plaintiff did not argue or submit evidence indicating that CHL was involved in negotiating

3   or executing the Note or Deed.

4          The loan documents include a number of different forms, all of which were signed by

5   Plaintiff on November 1, 2006.  The Note states that the "initial" monthly payments will be

6   $711.54, unless the payments are adjusted pursuant to Section 3(F).  Note ¶ 3(B).  These payments

7   are sufficient to pay off the principal and interest due in substantially equal payments over a 40-

8   year period (the amortization period).  Note ¶ 3(B).  Beginning on January 1, 2008, and continuing

9   every year on that day, the monthly payment can change.  Note ¶ 3(C).  This is a "Payment Change

10  Date."  *Id.*  The payment will change to an amount that would be sufficient to repay the unpaid

11  principal in substantially equal payments over the remainder of the amortization period.  The new

12  monthly payment will not increase by more than 7.5% of the previous minimum payment (the

13  "payment cap"), but this restriction has exceptions, noted below.  The monthly payment can also

14  change more frequently depending on certain circumstances, discussed below.

15         The Note states that the initial interest rate on the loan is 1%, but that this interest rate can

16  change beginning on January 1, 2007, and every month thereafter (in other words, the interest rate

17  can change beginning two months after the loan was signed).  *See* Note ¶ 2.  Starting on January 1,

18  2007, the interest rate may be set based on an Index interest rate (defined as the "Selected Interest

19  Rates H.15" published by the Federal Reserve Board), plus 3.75 percentage points, rounded to the

20  nearest .125%.  Note ¶ 2(D), (E).  The interest rate may be re-calculated each month.  Note ¶ 2(E).

21         The Note states that the principal amount of the loan may change, but will never exceed

22  110% of the original principal.  Note ¶ 1.  Elsewhere, however, it states that the principal may

23  exceed 110% if the borrower makes only minimum payments and if the interest rate increases; in

24  this event, a new minimum payment sufficient to repay the unpaid principal in full over the

25  remainder of the amortization period, based on the interest rate in effect during the prior month,

26  will apply.  Note ¶ 3(F).  In this event, the 7.5% payment cap does not apply.

27         The Note states that starting with the first date the interest rate is changed, Plaintiff will be

28  given four different "payment options."  Note ¶ 3 (H).  The four payment options are defined as

3

1    follows.  First is a "Minimum Payment," which is the minimum amount the lender will accept as a

2    monthly payment.  The Minimum Payment will be provided after the first interest change date (as

3    early as January 1, 2007) and every month after that.  The Minimum Payment will not decrease the

4    principal balance.  Note ¶ 3(H)(1).  If the Minimum Payment is not enough to cover the interest

5    due, negative amortization will occur, and the loan balance will increase.  *Id.*  Second is an

6    "Interest Only Payment," which will cover interest, but will not decrease the principal balance of

7    the loan.  Third is a "30-year Amortized Payment," which will pay off the principal and interest in

8    substantially equal payments by the "maturity date."  Fourth is a "15-year Amortized Payment,"

9    which will pay off the principal and interest in substantially equal amounts within a fifteen year

10   term.  *Id*.

11          On the fifth annual Payment Change Date, and every succeeding fifth Payment Change

12   Date, the "Full Payment" will become the "Minimum Payment" (even if this results in an increased

13   Minimum Payment that exceeds the payment cap).  Note ¶ 3(G).  This means that the Minimum

14   Payment will become the amount necessary to pay off the remaining principal over the remainder

15   of the amortization period.  Note ¶ 3(C).

16          In addition to the Note itself, Plaintiff executed a document titled Adjustable Rate Balloon

17   Rider (Balloon Rider) which states that it "is incorporated into and shall be deemed to amend and

18   supplement the Mortgage Deed of Trust."  Def.'s Ex. 2 at CHL00117-122.  Like the Note, the

19   Balloon Rider states that the interest rate applied to the principal may change as of January 1, 2007,

20   and that the monthly payment may change starting January 1, 2008, or earlier if the unpaid

21   principal balance exceeds 110%.  *See* Balloon Rider at CHL 00117-18; Note at ¶¶ 2 - 3.

22          Plaintiff also executed a document titled Balloon Payment Disclosure.  Def.'s Ex. 3

23   (Balloon Disclosure).  This document states that the "loan provides for 359 monthly payments of

24   principal and interest in the amount of $711.54 each.  Assuming that all of the monthly payments

25   have been paid exactly on the date that each is due, a final balloon payment of the then outstanding

26   principal balance plus all earned interest remaining unpaid estimated to be in the amount of

27   $186,191.38 shall become due and payable on DECEMBER 1, 2036."  Balloon Disclosure.  The

28

United States District Court
For the Northern District of California

4

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1    Balloon Disclosure also states "I . . . acknowledge that these provisions have also been orally

2    explained to me."  Plaintiff signed the Balloon Disclosure under this statement.

3        Plaintiff also signed a "Variable Rate Mortgage Balloon Loan Program Disclosure," which

4    provides information regarding the different payment options available depending on various

5    circumstances, as defined in the Note.  Def.'s Ex. 4 (Variable Rate Disclosure).  This document

6    states that "[f]or the first twelve months of your loan, your payment will be based on the Initial

7    Interest Rate, loan amount and loan term.  Your payment may change every twelve months,

8    beginning with the thirteenth payment."  Variable Rate Disclosure at CHL00235.  The Variable

9    Rate Disclosure also states "[y]our interest rate under this ARM can change every month,

10   beginning with the first regularly scheduled payment and each month thereafter."  Variable Rate

11   Disclosure at CHL00234.

12       Plaintiff also signed a document titled "Federal Truth-in-Lending Disclosure Statement."

13   Def.'s Ex. 5 (TILDS).  This statement shows that Plaintiff's payment schedule would be: $711.54

14   monthly for 12 months; $764.91 monthly for 10 months; $2,280.16 monthly for 337 months; and a

15   final payment of $186,191.39 on December 1, 2036.  *Id.*  Regarding the first 12 monthly payments

16   of $711.54, at least the first of these would be principal and interest payments, but, as soon as the

17   interest was raised pursuant to ¶ 2(B) of the Note, these payments would become Minimum

18   Payments insufficient to pay for both principal and interest.  As of January 1, 2008, the first

19   Payment Change Date, the Minimum Payment could be increased by 7.5% pursuant to ¶ 3(D) of

20   the Note.  $764.91 represents a 7.5% increase from $711.54.  Assuming the interest rate was raised

21   in January 2007, the second set of 10 monthly payments of $764.91 would also be Minimum

22   Payments, insufficient to pay both principal and interest due.  As a result, after 22 months of

23   making the listed payments, the principal balance on the loan would reach the 110% increase cap

24   as stated in ¶ 3(F) of the Note.  At this point, ¶ 3(H) of the Note states that a new Minimum

25   Payment will be set in an amount that "would be sufficient to repay my then unpaid principal in

26   full over the remainder of the Amortization Period in substantially equal installments at the interest

27   rate in effect during the preceding month."  In the TILDS, this amount is estimated to be $2,280.16

28   monthly payments for 337 months.  The final "balloon" payment of $186,196 is shown due on

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

December 1, 2036.  The Note states that if any balance remains on this date, it is due in full the same day.  ¶3(A).  The TILDS states that the loan contains a variable rate feature and that "[d]isclosures about the variable rate feature have been provided to you earlier."  *Id.*

Plaintiff testified that he did not read the loan documents before he signed them.  Plaintiff testified that the only information about the loan that he gained from any of the documents was from the Balloon Disclosure, and that the only information he took from this document was that his loan payments would be $711.54 monthly payments of principal and interest.

Plaintiff's loan was ultimately transferred from the original lender, Alliance, to a third party (GMAC Mortgage), and then transferred again to CHL on February 1, 2007.  Def.'s Ex. 6.  While the loan was serviced by Alliance and GMAC, Plaintiff was billed $711.54 monthly for December 2006, January 2007, and February 2007, in accordance with the 1% interest rate in effect during that time.  Def.'s Ex. 8 at CHL 00064; Pl.'s Ex. 100-CHL 00277.  When CHL took possession of the loan, it appears that Plaintiff had already paid his mortgage for the month of February 2007 in response to a bill from GMAC.  *Id.*  The parties agree that beginning in March, 2007, CHL applied a new interest rate of 8.75% to Plaintiff's loan.  However, CHL introduced no evidence that it provided Plaintiff with any notice that his interest rate had increased in March.  The only evidence of record shows that on January 25, 2007, when CHL sent notice to Plaintiff that it would take over servicing of his loan, it included a payment coupon without a due date listing $711.54 as "next payment."  Def.'s Ex. 6.  No payment options are listed on the payment coupon.  Because the interest rate had actually been raised, however, $711.54 was no longer sufficient to pay principal and interest due.  Plaintiff made two payments of $711.53 on March 7, 2007.

On September 20, 2007, Plaintiff's attorney sent a letter to CHL.  *See* Def.'s Ex. 8.  In this letter, Plaintiff's counsel states Plaintiff's belief that there has been an error in servicing his account because the principal of his loan has increased despite his monthly payments of $711.54.  *Id.*  Citing the Balloon Disclosure, the letter states Plaintiff's understanding that $711.54 should be sufficient to pay both interest and principal.  *Id.*  CHL never provided a substantive response to this letter.  Rather, CHL first requested that Plaintiff's counsel provide proof of Plaintiff's consent for CHL to discuss the loan with counsel.  *See* Pl.'s Ex. 11.  When counsel forwarded an authorization,

6

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1    CHL responded with a letter providing a phone number for Plaintiff or counsel to contact with

2    questions.  Pl.'s Ex. 14.

3           On November 14, 2008, November 16, 2009, and November 16, 2010, CHL sent Plaintiff

4    documents each titled "Adjustable Rate Mortgage (ARM) Payment Adjustment Notice."  Def.'s

5    Exs. 11, 14, 15.  These documents state that the Minimum Payment due on the Note will be

6    adjusted on January 1 of the following year, and state what the new monthly Minimum Payment

7    will be.  For January 1, 2009, the Minimum Payment would increase to $822.28.  Def.'s Ex. 11.

8    For January 1, 2010, the Minimum Payment would increase to $883.95.  Def.'s Ex. 14.  For

9    January 1, 2011, the Minimum Payment would increase to $950.25.  Def.'s Ex. 15.

10          III.    Conclusions of Law

11                  a.   Standing

12          CHL argues that Plaintiff has failed to prove that he has standing to bring a UCL claim on

13   any of the asserted grounds because he has failed to show that he suffered any injury-in-fact as a

14   result of the allegedly unlawful or unfair acts.  The California Supreme Court has recently held that

15   if a party can prove "a personal, individualized loss of money or property in any nontrivial amount,

16   he or she has also alleged or proven injury in fact" and has therefore demonstrated standing under

17   the UCL.  *Kwikset Corp. v. Super. Ct.,* 51 Cal. 4th 310, 325 (2011).  The loss of money or property

18   must have a "causal connection" to the claimed UCL violation.  *Rubio v. Capital One Bank,* 613

19   F.3d 1195, 1204 (9th Cir. 2010) (finding that plaintiff sufficiently alleged injury-in-fact for UCL

20   standing based on a lender's failure to disclose the Annual Percentage Rate (APR) on her credit

21   card, resulting in loss because the undisclosed increase in APR forced her to either close the

22   account and lose the credit, or pay increased interest rates).  At trial, in response to a specific

23   question from the Court regarding his standing, Plaintiff argued that he had suffered injury-in-fact

24   as a result of the TILA claim because CHL charged him more money than was disclosed.  The

25   problem with this argument is that Plaintiff testified at trial that he only read one of the many

26   disclosures associated with his loan, and that he didn't even read that one disclosure in its entirety.

27          Plaintiff testified that he did not read the TILDS, or any of the loan documents, except for

28   the portion of the Balloon Disclosure document suggesting that the loan payments would be set at

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

$711.54 principal and interest payments monthly for 359 months.  If Plaintiff were able to claim damages under TILA[1], he would be limited to claiming statutory damages, as he cannot show reasonable reliance based on any alleged TILA violation.  As Plaintiff argues, in the Ninth Circuit, the consumer must show that he would not have entered into the transaction had proper disclosures been made.  "[I]n order to receive actual damages for a TILA violation . . . a borrower must establish detrimental reliance."  *Gold Country Lenders v. Smith*, 289 F.3d 1155, 1157 (9th Cir. 2002).  Detrimental reliance may be proven by evidence that the borrower "would either have secured a better interest rate elsewhere, or foregone the loan completely," if complete disclosures had been made.  Plaintiff cannot meet this standard because he admits he did not read the disclosures that were made.  Therefore, even if Plaintiff could prove a TILA violation, he could not show that he was damaged by it.  Even if the Balloon Disclosure could serve as the basis of a TILA violation (which the Court concludes it cannot, below), Plaintiff's alleged reliance on one statement in that disclosure to the exclusion of every other document associated with the loan is unreasonable, and would be insufficient evidence of detrimental reliance to support a claim for TILA damages.  Plaintiff cannot show any loss of money or property resulting from the alleged TILA violations because he testified that he did not read nearly all of the documents associated with his loan.  Because Plaintiff cannot show that he lost money or property as a result of the alleged TILA violations, he lacks standing to bring a UCL claim predicated on these violations.

Plaintiff's standing argument regarding the "unfair" prong of the UCL is easier to address.  Plaintiff did not argue that he lost any money or property as a result of CHL's alleged failure to give notice of the March 2007 increase in interest, or any other payment increase.  Although Plaintiff argued that CHL unfairly failed to honor the terms of the Note by increasing the interest rate, as discussed below, Plaintiff has introduced no proof that the interest rate increase was contrary to the terms of the Note.  Moreover, the undersigned judge, as well as the previously-assigned United States District Judge, Judge Ware, and the Superior Court Judge, Judge Cabrinha

---

[1] The Court previously found Plaintiff's claim for TILA damages time-barred.  *See* Apr. 11, 2011 Order at 12.

8

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1    all found that the Note authorized the rate increase.  Accordingly, the Court finds that Plaintiff

2    lacks standing to bring a UCL claim predicated on the allegedly unfair failure to provide notice.

3          Despite the fact that the Court finds that Plaintiff lacks standing, it appeared at least

4    theoretically possible that Plaintiff could prove standing to bring his UCL claims at the start of

5    trial.  In other words, had Plaintiff successfully proven a TILA violation, he might also have been

6    able to prove a loss of property or money stemming from the violation.  Because the Court's

7    conclusion about Plaintiff's standing is somewhat related to its finding that Plaintiff's UCL claim is

8    unsuccessful on the merits, the Court provides conclusions of law regarding the substance of

9    Plaintiff's claims below.

10                    b.   Unlawful Prong – TILA

11                        1.   TILA Violation Based on Documents Other than TILDS

12         Plaintiff argues that any disclosure provided to him during the loan origination can serve as

13   the basis for a violation of TILA.  In particular, Plaintiff argues that the Balloon Disclosure

14   document contains inaccuracies which constitute a TILA violation.  As discussed above, the

15   Balloon Disclosure document states that "[t]his loan provides for 359 monthly payments of

16   principal and interest in the amount of $711.54."  Due to the variable rate feature of the loan,

17   however, it was virtually certain that the interest rate would rise above the initial 1% rate, and that

18   $711.54 would not pay for both principal and interest after the first few monthly payments.  This is

19   reflected in the TILDS, which discloses monthly payments beginning at $711.54, but substantially

20   increasing to $2,280.16 less than two years after origination.  Plaintiff also argues that a statement

21   in the Variable Rate Disclosure can serve as the basis for a TILA violation because the statement

22   promises a fixed 1% interest rate for the first year of the loan.  The Court finds that the Balloon

23   Disclosure is not a TILA disclosure and cannot create liability for CHL as an assignee, but that the

24   Variable Rate Disclosure is incorporated into the TILDS and provides TILA-mandated disclosures,

25   and therefore may serve as the basis for a TILA violation.

26         TILA requires that lenders provide certain disclosures to borrowers reflecting the terms of

27   the legal obligation between the parties.  The Staff Commentary to TILA's implementing statute,

28   Regulation Z, states that "[t]he disclosures shall reflect the credit terms to which the parties are

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

legally bound as of the outset of the transaction . . . The legal obligation normally is presumed to be contained in the note or contract that evidences the agreement . . . If the parties informally agree to a modification of the legal obligation, the modification should not be reflected in the disclosures unless it rises to the level of a change in the terms of the legal obligation."  12 C.F.R. Pt. 226, Supp. I, ¶17(c)(1)(1)-(2).  Regulation Z provides that "the disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18 or § 226.47."  12 C.F.R. § 226.17(a).  The Staff Commentary to Regulation Z states that "[t]he general segregation requirement described in this subparagraph does not apply to the disclosures required under §§ 226.19(b) and 226.20(c) although the disclosures must be clear and conspicuous."  12 C.F.R. Pt. 226, Supp. I, ¶17(a)(1)(2).

The Variable Rate Disclosure appears to fit into the exception for separate variable rate disclosures under § 226.19(b).  The Variable Rate Disclosure contains specific disclosures relating to the variable rate feature of the Note as listed in § 226.19(b).  In addition, the TILDS states that "[y]our loan contains a variable rate feature.  Disclosures about the variable rate feature have been provided to you earlier."  Def.'s Ex. 4.  Pursuant to § 226.18(f)(2), this is the appropriate disclosure regarding the variable rate feature of the loan.  Therefore, the Variable Rate Disclosure is properly considered part of the TILA disclosures.  However, balloon payments are not listed as an exception to the general rule that TILA disclosures must be "segregated."  Accordingly, the Balloon Disclosure is *not* properly considered part of the TILA disclosures.  To put this another way, if Plaintiff's claim was that some information was omitted from the TILA disclosures in violation of TILA, but that information was included in the Balloon Disclosure, CHL would not be able to rely on the Balloon Disclosure as disclosing the information because it is not part of the "segregated" TILA disclosures.

Plaintiff cites several cases in support of his argument that all of the disclosures provided to Plaintiff were subject to TILA, and that a TILA violation can arise based on a discrepancy between any disclosure document and the terms of the legal obligation between the parties.  Plaintiff advanced this argument previously, and the Court found it unpersuasive.  In light of the additional authority Plaintiff has cited, the Court is still not persuaded.  Plaintiff cites *In re Ralls Bank of New*

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1   *York,* 230 B.R. 508, 517 (Bankr. E.D. Pa 1999).  Although the court in that case considered

2   multiple documents, it concluded that the time period to exercise TILA rescission was extended

3   based on "the contradictions between the material terms of the [TILDS] provided and the terms

4   agreed upon by the parties in the instant transaction, as reflected in testimony and other

5   documentation."  *Id.*  Likewise, in *Hunter v. Richmond Equity*, No. CV 85-P-2734-S, 1987 WL

6   109703, at *4 (N.D. Ala. Nov. 23, 1987), the Court found a TILA violation based on an omission

7   of a broker's fee in the TILA disclosure.  While the omission was evidenced by other documents

8   which disclosed that the fee was in fact charged, only the insufficiency of the TILA disclosure

9   itself gave rise to the violation.  In another case Plaintiff cites, the court found a potential TILA

10  violation based on the lender's failure to disclose its intention to impose an annual fee on the

11  plaintiff's credit card account.  *Rossman v. Fleet Bank Nat'l Ass'n,* 280 F.3d 384, 399-400 (3d Cir.

12  2002).  There is no discussion of finding TILA liability based on disclosures other than TILA

13  disclosures in this case.

14          The statement in the Balloon Disclosure regarding the monthly payments is neither a term

15  of the Note, nor a disclosure made pursuant to TILA.  An assignee may be liable for a TILA

16  violation only if it is "apparent on the face of the disclosure," meaning that "the disclosure can be

17  determined to be incomplete or inaccurate by a comparison among the disclosure statement, any

18  itemization of the amount financed, the note, or any other disclosure of disbursement.'"  15 U.S.C.

19  § 1641(e)(2).  The Balloon Disclosure itself does not state the legal obligation between the parties.

20  Therefore, it does not render the TILA disclosures inaccurate.  Because the Balloon Disclosure is

21  not a part of the TILA disclosures, any inaccuracy in the Balloon Disclosure does not appear on the

22  face of the TILA disclosures.  Accordingly, the Court concludes that CHL cannot be held liable for

23  a TILA violation based on the alleged inaccuracy in the Balloon Disclosure statement, as this

24  inaccuracy was not apparent on the face of the TILA disclosures and does not render them

25  inaccurate.

26                      2.   TILA Violation in Variable Rate Disclosure

27          Plaintiff points to the statement "for the first twelve months of your loan, your payment will

28  be based on the Initial Interest Rate, loan amount and loan term," from the Variable Rate

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

United States District Court
For the Northern District of California

1    Disclosure as another asserted basis for a TILA violation.  Plaintiff argues that this statement

2    required CHL to wait until January 1, 2008 before raising the 1% interest rate.  Plaintiff argues that

3    this disclosure contradicts the Note, which he admitted at trial permits the interest rate to rise

4    beginning in January, 2007.  Plaintiff's argument is incorrect.  The Variable Rate Disclosure is

5    consistent with the Note.  The Variable Rate Disclosure states that while the *payment* will be based

6    on the initial interest rate (of 1%) for the first twelve months, the "Interest Rate under this ARM

7    can change every month, beginning with the first regularly scheduled payment and each month

8    thereafter."  Def.'s Ex. 4 at CHL 00234.  Increasing the interest rate would result in the payments,

9    which were based on the 1% interest rate, being insufficient to pay for both principal and interest.

10   The Variable Rate Disclosure discusses this, stating that "[d]uring the life of your loan your

11   monthly payment may not be sufficient to pay the full amount of the Interest due.  This might

12   occur, for example, if you choose to make a limited Payment.  This can also occur from increases

13   in the Interest Rate prior to the Payment Change Date."  *Id*. at CHL 00236.

14        Plaintiff argues that the disclosure in the Variable Rate Disclosure violates TILA because it

15   is not "clear and conspicuous."  15 U.S.C. § 1632(a).  He argues that the disclosure is subject to

16   multiple, reasonable interpretations and is therefore unclear, citing *Handy v. Anchor Mortg. Corp.*,

17   464 F.3d 760, 764 (7th Cir. 2006).  However, Plaintiff has not put forward a plausible

18   interpretation of the cited statement in the Variable Rate Disclosure that is at odds with the terms of

19   the Note or the TILDS.  The facts that the interest rate could rise starting in January, 2008, and that

20   the payments (which could not rise until January, 2008 or until the principal balance reached

21   110%) would then fail to pay for both principal and interest were disclosed in the Note, the TILDS,

22   and the Variable Rate Disclosure.  Plaintiff has failed to introduce evidence of any TILA violation

23   based on the statement "for the first twelve months of your loan, your payment will be based on the

24   Initial Interest Rate, loan amount and loan term," from the Variable Rate Disclosure.

25                          3.   TILA Violation in TILDS

26        Plaintiff argues that the TILDS violates TILA because it does not specify whether the

27   payments listed represent principal and interest payments, Minimum Payments, or other payments.

28   Plaintiff argues that because at least the first payment of $711.54 was a principal and interest

                                              12

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

*Left margin:* **United States District Court** / For the Northern District of California

1   payment, all of the payments listed in the TILDS should be considered principal and interest

2   payments.  Because the lender had the option to increase the interest starting in January, 2007,

3   however, the $711.54 payment would not be sufficient to cover both principal and interest if the

4   interest rate was increased above 1%.  Plaintiff bases his argument that the TILDS inaccurately

5   discloses the payments on two grounds.  First, he argues that the TILDS disclosure of a balloon

6   payment of less than the entire principal balance of the loan must mean that some amount of

7   principal is being paid during the life of the loan; thus, leading to the reasonable deduction that the

8   $711.54 monthly payments for the first year must be principal and interest payments.  However, in

9   addition to the $711.54 and $764.91 payments for the first 22 months, the TILDS shows that

10  starting in the 23rd month, the payments increase to $2,280.16 and remain there for the life of the

11  loan.  Therefore, Plaintiff's conclusion that the $711.54 payments must cover principal and interest

12  does not follow.  According to the Note, it is the increased $2,280.16 monthly payments that must

13  cover principal and interest amortized over the remaining loan term (which is longer than the 30

14  years leading up to the maturity date, resulting in the balloon payment).  Plaintiff also argues that

15  CHL was on notice that $711.54 must be the principal and interest payments for the first full year

16  of the loan because they received records showing that the previous Note holders had charged

17  $711.54 principal and interest for December 2006 and January 2007.  In addition, Plaintiff argues

18  that because CHL itself charged $711.54 principal and interest for February, 2007, this was an

19  "admission" that this payment could not change until January 2008.

20          The Court does not find Plaintiff's arguments persuasive.  TILA requires lenders to make

21  disclosures reflecting the legal obligation between the parties.  12 C.F.R. 226.17(c)(1).  Plaintiff's

22  legal obligation was to pay at least the Minimum Payment due each month on his loan.  Therefore,

23  the payment schedule in the TILDS, which set forth the Minimum Payments projected to be due

24  each month, accurately reflected the legal obligation between the Plaintiff and the lender.  The fact

25  that some of the payments listed were both Minimum Payments and principal-and-interest

26  payments amortized over a 30-year period does not automatically render the disclosure inaccurate.

27  Plaintiff has cited no provision of TILA requiring that payments must be designated as principal-

28  and-interest, interest only, or minimum payments.  Moreover, the Staff Commentary to Regulation

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

United States District Court
For the Northern District of California

1   Z specifies that in "graduated payment adjustable rate mortgages," like Plaintiff's, which "involve

2   both a variable interest rate and scheduled variations in payment amounts during the loan term,"

3   and where "the initial scheduled payment may remain constant for a set period before rate

4   adjustments affect the payment amount," the "schedule of payments [must] disclose[] the amount

5   of any scheduled initial payments followed by an adjusted level of payments *based on the initial*

6   *interest rate*."  12 C.F.R. Pt. 226, Supp. I, ¶17(c)(1)(12) (emphasis added).  The payment schedule

7   in the TILDS appears to be consistent with TILA's disclosure requirements as explained in the

8   Staff Commentary.  Other courts have dismissed TILA claims premised on similar allegations.  *See*

9   *Conder v. Home Sav. of Am.,* 680 F. Supp. 2d 1168, 1173 (C.D. Cal. 2010).  The Court finds that

10  Plaintiff has failed to prove a TILA violation based on the fact that the payment schedule in the

11  TILDS does not identify each payment as a principal-and-interest, Minimum Payment or other type

12  of payment.

13          In addition to his argument regarding the payment schedule in the TILDS, Plaintiff argues

14  that the TILDS does not sufficiently disclose negative amortization.  Plaintiff cites no TILA

15  provision in particular that was allegedly violated.  In response, CHL argues that its disclosures

16  complied with TILA.  The TILDS provides the information required by 12 C.F.R. § 226.18(f)(2).

17  Regulation Z states that "[i]f the annual percentage rate may increase after consummation in a

18  transaction secured by the consumer's principal dwelling with a term greater than one year, the

19  following disclosures [must be made]: (i) The fact that the transaction contains a variable-rate

20  feature. (ii) A statement that variable-rate disclosures have been provided earlier."  12 C.F.R. §

21  226.18(f)(2).  This is exactly what the TILDS states.  The Variable Rate Disclosure provides the

22  variable rate disclosures required by 12 C.F.R.§ 226.19, including disclosures relating to negative

23  amortization.  As discussed above, providing these disclosures separately from the TILDS is in

24  compliance with Regulation Z.  *See* 12 C.F.R. Pt. 226, Supp. I, ¶17(a)(1)(2).  Based on all of this,

25  Plaintiff's argument that negative amortization was not disclosed in violation of TILA fails.

26          Plaintiff argued in his supplemental Proposed Findings of Fact and Conclusions of Law that

27  the disclosures failed to disclose the payment cap.  Regulation Z's Staff Commentary states that

28  "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time

                                        14

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1    of the first adjustment, from changing to the rate determined by the index or formula at

2    consummation, the effect of that rate or payment cap should be reflected in the disclosures." 12

3    C.F.R. Pt. 226, Supp. I, ¶17(c)(1)(10)(iii).  The TILDS and the Variable Rate Disclosure show the

4    effect of the payment cap on the payment schedule and disclose that making the minimum

5    payments could result in negative amortization.  Therefore, Plaintiff has failed to show a TILA

6    violation based on failure to disclose the payment cap as required by TILA.

7           Finally, Plaintiff introduced evidence of an earlier Truth in Lending Disclosure Statement

8    and a document titled California Disclosure reflecting different terms than the terms of the Note.

9    *See* Pl.'s Exs. 100 - CHL 00189 and 00191.  Plaintiff argued that these documents violated TILA

10   because they do not reflect the terms of the Note.  These documents were dated October 1, 2006

11   (one month before Plaintiff signed the Note and other loan documents).  The California Disclosure,

12   like the Balloon Disclosure, is not a TILA disclosure and therefore cannot be the basis for assignee

13   liability for CHL.  But more importantly, neither document is relevant to Plaintiff's claim of TILA

14   violations.  These documents were dated a month before the loan closed.  Plaintiff introduced no

15   evidence regarding the context in which the October 1, 2006 disclosures were made.  The October

16   1, 2006 TILA disclosure is signed only by Plaintiff.  Perhaps Plaintiff and the original lender were

17   negotiating loan terms as reflected in these documents which were ultimately not available.  In any

18   case, TILA states that if earlier disclosures are made which are later rendered inaccurate, "the

19   inaccuracy is not a violation of this regulation, although new disclosures may be required under

20   paragraph (f) of this section." 12 C.F.R. § 226.17(f).  Paragraph (f) states specific terms which

21   must be disclosed when earlier disclosures become inaccurate.  Plaintiff did not argue that the

22   November 1, 2006 TILDS failed to disclose any of the information required by § 226.17(f).  The

23   evidence shows that Plaintiff was provided with accurate TILA disclosures at the time the loan was

24   signed.  Plaintiff's arguments regarding the October 1, 2006 disclosures are insufficient to show a

25   TILA violation.  This is particularly true because, as an assignee of the loan, CHL cannot be liable

26   for such a violation unless it is clear on the face of the November 1, 2006 TILA disclosures.  Under

27   TILA, an assignee such as CHL is liable only if: "(A) the violation for which such action or

28   proceeding is brought is *apparent on the face of the disclosure statement provided in connection*

15

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1   *with such transaction* pursuant to this subchapter; and (B) the assignment to the assignee was

2   voluntary." 15 U.S.C. § 1641(e)(1) (emphasis added).

3                          4.   TILA Violation Based on Oral Disclosures

4          Some courts have found a TILA violation based on inconsistent written and oral

5   disclosures.  *See Jenkins v. Landmark Mortg. Corp.,* 696 F.Supp. 1089, 1093-94 (W.D. Va. 1988)

6   (finding that inconsistent disclosures regarding the rescission period extended the time for plaintiff

7   to exercise the right of rescission).  However, the Court finds that Plaintiff has introduced

8   insufficient evidence of inconsistent oral disclosures to give rise to liability for CHL.  As discussed

9   above, a TILA violation must be clear on the face of the "segregated" TILA disclosures.  15 U.S.C.

10  § 1641(e)(1).  The only evidence of inconsistent oral statements introduced at trial was the

11  statement on the Balloon Disclosure that "I . . . acknowledge that these provisions have also been

12  orally explained to me."  Plaintiff argues that because the Balloon Disclosure stated that Plaintiff

13  would make 359 payments of $711.54 "principal and interest," this is evidence that Plaintiff was

14  provided oral disclosures about the terms of his loan that materially differed from the actual

15  disclosed terms, thus giving rise to a TILA violation.  The Court finds that this is insufficient

16  evidence to create liability for CHL as the assignee of the Note.  As discussed above, an assignee

17  can only be found liable if the violation is clear on the face of the TILA disclosures.  The Balloon

18  Disclosure document was not part of the TILA disclosures.  Because Plaintiff has failed to

19  introduce any evidence of inconsistent oral disclosures that were clear on the face of the TILA

20  disclosures, there is no basis to hold CHL liable for any oral misrepresentations made to Plaintiff

21  when the loan documents were signed.

22                          c.   Unfair Prong – Notice of Payment Increases

23         Plaintiff advances three arguments about alleged unfair acts by CHL.  The Court will first

24  discuss the alleged unfair acts and will then analyze whether these rise to the level of unfairness

25  required by the UCL.  First, Plaintiff argues that CHL was required to provide "advance" notice of

26  payment changes on a monthly basis because the different amortized payment options varied

27  depending on what interest rate applied and the remaining balance on the loan.  Plaintiff argues this

28  notice was required by the Variable Rate Disclosure and by TILA.  CHL argues that notice was

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

**United States District Court**
For the Northern District of California

provided to Plaintiff in the form of the monthly bills which set forth the different payment options available to him.  Other than his arguments about the March 2007 statement, addressed below, Plaintiff did not argue that CHL failed to provide billing statements listing payment options at any other time.  Instead, Plaintiff argued that CHL failed to provide "advance notice," which he defines as more than 30 days' notice.  *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law at 4.  However, CHL points out that pursuant to both the Variable Rate Disclosure and TILA, 30 days' notice is only required in advance of each annual Payment Change Date.  *See* Variable Rate Disclosure at 2 ("[y]ou will be notified in writing at least 30 days before each [annual] Payment Change Date of the new payment amount."); 12 C.F.R. § 226.20(c) (requiring notice "at least once each year during which an interest rate adjustment is implemented without an accompanying payment change, and at least 25, but no more than 120, calendar days before a payment at a new level is due.").  As defined in the Note, a Payment Change date occurs annually on January 1, and CHL introduced evidence that an annual notice with payment adjustment information has been sent every year in November.  Note ¶ 3(C); Def.'s Exs. 11, 14, 15.  Plaintiff has cited no requirement that CHL provide more than 30 days' notice of payment changes other than Payment Change Dates.  The Note itself only requires that "notice of any changes in the amount of my monthly payment" be delivered or mailed "before the effective date of any change."  Plaintiff did not argue that he has failed to receive monthly billing statements from CHL setting forth the four payment options, other than for March, 2007.  Therefore, Plaintiff cannot show that CHL acted unfairly regarding the monthly changes in various payment options because CHL was not required to provide more than 30 days' notice of these changes.

Second, Plaintiff argues that CHL committed not to change the $711.54 principal and interest payments when CHL stated that "[t]he transfer of servicing of your mortgage loan does not affect any term or condition of the mortgage instruments, other than directly related to the servicing of your loan."  Def.'s Ex. 6.  Plaintiff further argues that CHL's failure to respond to his attorney's September, 2007 letter is an admission of the charges in that letter that CHL was not properly servicing the loan.  This argument misstates the evidence.  Plaintiff has introduced no evidence that CHL's increase of the interest rate in March 2007 was a violation of the terms of the Note, and the

17

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

**United States District Court**
For the Northern District of California

1    Court has previously found that the Note authorized the interest rate increase.  In addition, although

2    CHL did not respond to Plaintiff's attorney's letters to Plaintiff's satisfaction, CHL did respond to

3    the letters.  Accordingly, Plaintiff has failed to show that CHL acted unfairly by raising the interest

4    rate because the Note entitled them to do so.  Plaintiff has also failed to show any admission by

5    CHL that it was improperly or unfairly servicing his loan.  This Court previously found that CHL

6    was properly servicing Plaintiff's loan.  *See* Apr. 11, 2011 Order at 8.

7           Third, Plaintiff argues that pursuant to Paragraph 4 of the Note, CHL was required to give

8    advance notice of the payment change that occurred in March, 2007, when the $711.54 payment

9    went from being a principal and interest payment to a Minimum Payment as a result of the interest

10   rate increase.  The Note states that "[t]he Note Holder will deliver or mail to me a notice of any

11   changes in the amount of my monthly payment before the effective date of any change."  Note ¶ 4.

12   Plaintiff argues that CHL failed to provide "advance notice" of the change as required by the

13   contract.  There is no evidence in the record of what, if any, notice Plaintiff was provided in

14   advance of his March, 2007 payment, other than the coupon attached to the January 25, 2007

15   transfer letter (which lists a payment of $711.54 without a due date, does not indicate if this

16   payment covers principal and interest, and does not list other payment options).  Regarding the

17   March, 2007 payment, CHL provided no evidence of a bill to Plaintiff setting forth the amounts

18   due on his loan in March, the new interest rate, or payment options.  Therefore, on the record

19   before the Court, it appears that Plaintiff has shown that CHL failed to provide any notice of the

20   March 2007 payment options and increased interest rate as required by the Note at ¶ 4.

21          Thus, the only potentially unfair conduct that Plaintiff has identified is CHL's failure to

22   send Plaintiff a monthly loan statement in March, 2007.  As discussed above, Plaintiff introduced

23   no evidence of loss of money or property as a result of this alleged unfair conduct.  Although

24   Plaintiff claimed that CHL's increase of the 1% interest rate damaged him in the amount of the

25   increased payments, as noted above, multiple judges have concluded that CHL was permitted to

26   increase the interest rate.  Therefore, Plaintiff cannot claim the increased interest rate as damages

27   for the missing March, 2007 loan statement.  As a result, and as noted above, Plaintiff has failed to

28   prove that he has standing to bring this UCL claim.  But even if Plaintiff had standing to bring this

Case No.: 09-CV-02415-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1   claim, he failed to argue that the failure to send a March 2007 statement amounted to unfair

2   conduct in violation of the UCL.  For conduct to be unfair under the UCL, a plaintiff must show

3   either that the "practice violates public policy" or that "the practice is immoral, unethical,

4   oppressive or unscrupulous and causes injury to consumers which outweighs its utility."  *See*

5   *Rubio,* 613 F.3d at 1205.  Plaintiff made no argument that the alleged unfair act violated public

6   policy.  Such an argument would require Plaintiff to show that the act violated "specific

7   constitutional, statutory or regulatory provisions."  Plaintiff made no such showing.  Nor did

8   Plaintiff argue that the failure to provide a single billing statement was "immoral, unethical,

9   oppressive or unscrupulous" or that it caused injury to consumers which "outweigh[ed] its utility."

10  Simply asserting that a party breached a contract is not enough to make the breach "unfair" under

11  the UCL.  The breach must *independently* constitute unfair conduct pursuant to the above

12  standards.  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008).  In light

13  of Plaintiff's failure to advance any argument on the legal elements of his claim, the Court finds

14  that this claim must fail.

15          IV.     Conclusion

16          For the foregoing reasons, the Court finds that Plaintiff has failed to prove either a TILA

17  violation or any unfair act and has therefore failed to prove that CHL violated California's Unfair

18  Competition Law.  Accordingly, Plaintiff's requests for relief are DENIED.  The Clerk shall enter

19  judgment for Defendant CHL, and shall close the file.

20  **IT IS SO ORDERED.**

21  Dated: June 30, 2011

22                                                  LUCY H. KOH
                                                    United States District Judge
23

24

25

26

27

28

                                                19